No. 87-383

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

REX BEACH,

        Claimant/Appellant,

   -vs-

MONTANA DEPARTMENT OF HIGHWAYS,

        Employer,

and

STATE COMPENSATION INSURANCE FUND,

        Defendants and Respondents.


APPEAL FROM:  The Workers' Compensation Court,
              The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Allen L. McAlear, Bozeman, Montana


    For Respondent:

        Nancy Butler, Helena, Montana


Submitted on Briefs: February 4, 1988

Decided:  March 31, 1988

Filed: MAR 3 1 1988

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Mr. Beach filed a petition in the Workers' Compensation Court to obtain compensation in addition to that which the State Compensation Fund had agreed to pay under the occupational deafness statutes, Title 39, Chapter 71, Part 8, MCA. The court determined that Mr. Beach was not entitled to additional compensation. We affirm. Mr. Beach raises one issue on appeal:

Did the Workers' Compensation Court properly calculate the compensation for occupational deafness?

The parties have stipulated to most of the facts of this case. Mr. Beach worked for the Montana Highway Department from 1978 to 1985. In his job he operated a diesel mowing machine and was in the proximity of noisy heavy trucks and equipment. He suffered a loss of hearing as a result. In 1986 he received an audiogram test result which forms a basis for the computation of disability. The State Compensation Insurance Fund (State Fund) has paid for a 90.9% hearing impairment in the left ear, for 36.36 weeks at $146.50 per week or $5,326.74.

Mr. Beach contends that the Workers' Compensation Court improperly construed the applicable statutes. Those statutes read as follows:

> 39-71-805, Determining percent of hearing loss. (1) The percent of hearing loss, for purposes of the determination of compensation claims for occupational deafness, shall be calculated as the average in decibels of the thresholds of hearing for the frequencies of 500, 1,000, and 2,000 cycles per second. Pure tone air conduction audiometric instruments, approved by nationally recognized authorities in this field, shall be used for measuring hearing loss. If the losses of hearing

average 25 decibels or less in the three frequencies, as measured under ISO Standard 1964, such losses of hearing shall not then constitute any compensable hearing disability. If the losses of hearing average 92 decibels or more in the three frequencies, as measured under ISO Standard 1964, then the same shall constitute and be total or 100% compensable hearing loss.

(2) In measuring hearing impairment, the lowest measured losses in each of the three frequencies shall be added together and divided by three to determine the average decibel loss. For every decibel of loss exceeding 25 decibels, an allowance of 1½% shall be made up to the maximum of 100%, which is reached at 92 decibels.

(3) In determining the binaural percentage of loss, the percentage of impairment in the better ear shall be multiplied by five. The resulting figure shall be added to the percentage of impairment in the poorer ear and the sum of the two divided by six. The final percentage shall be representative of the binaural hearing impairment.

(4) Before determining the percentage of hearing impairment, in order to allow for the average amount of hearing loss from nonoccupational causes found in the population at any given age, there shall be deducted from the total average decibel loss one-half decibel for each year of the employee's age over 40 at the time of last exposure to industrial noise.

(5) No consideration shall be given to the question of whether or not the ability of an employee to understand speech is improved by the use of a hearing aid.

39-71-808. Compensation for occupational deafness. (1) Subject to the limitations herein contained, there shall be payable:

(a) for total occupational deafness of one ear, 40 weeks of compensation;

(b) for total occupational deafness of both ears, 200 weeks of compensation; and

(c) for partial occupational deafness, compensation shall bear such relation to that named herein as disabilities bear to the maximum disabilities herein provided.

3

Due to the complexity of the statute, we will set forth in this opinion the necessary computations, which are substantially the same as those in the lower court's findings of fact and conclusions of law.

Step one:  Average Decibel Loss.

The first step in computing percentage of hearing loss is explained in subsections (1) and (2).  The court must calculate the average in decibels of the thresholds of hearing for each ear for the frequencies of 500, 1,000, and 2,000 cycles per second.  This is the average decibel loss.  Subsection (1) also explains that if the average is 25 decibels or less, then such hearing loss is not compensable.  If the average is 92 decibels or more then the loss is total or 100% compensable.  The statute, therefore, clearly establishes a range within which the average decibel loss must fall to be compensable.

Subsection (2) specifically explains the procedure for calculating average decibel loss.  The lowest measured losses in each of the three frequencies, as measured by an audiogram, are added together and divided by three.  The following table reflects the computation of this first step in calculation of percent of hearing loss, in Mr. Beach's case:

| Frequency | 500 | 1000 | 2000 | Total Decibels | Average Decibel Loss |
|-----------|-----|------|------|----------------|----------------------|
| Right ear | 5 | 35 | 50 | 90 | 30 |
| Left ear | 85 | 110 | 110 | 305 | 101.6 |

Step two:  Age Factor.

The last sentence of subsection (2) explains how these averages are translated into percentage of hearing impairment.  Subsection (4), however, must first be considered.

4

This subsection requires a deduction of one-half decibel for each year of age over 40 at the time of last exposure to industrial noise. In Mr. Beach's case, the last exposure was at age 72; therefore, we must deduct one-half decibel for 32 years or 16 decibels from the "total average decibel loss." Mr. Beach contends that "total average decibel loss" refers to subsection (3) which explains how to compute the binaural percentage of hearing impairment. He argues that the 16 decibel age factor must be subtracted when calculating the binaural percentage. Mr. Beach's interpretation is not consistent mathematically. He asks us to subtract the result in subsection (4) in the computation of subsection (3), but to do so we would have to deduct a sum expressed in decibels from a sum expressed in percentages. Additionally, § 39-71-808, MCA, allows compensation for hearing loss in only one ear. Were we to adopt Mr. Beach's argument, the age factor would be deducted for a worker with hearing loss in both ears but not for a worker with loss in only one ear. Such a result does not comport with the obvious purpose of the age factor deduction -- to avoid compensating a worker for losses due to age rather than work conditions. Rather, we conclude that the age factor must be deducted from the average decibel loss for each ear, determined previously in step one. That calculation is illustrated as follows:

Right ear: 30 - 16 = 14 decibels.
Left ear: 101.6 - 16 = 85.6 decibels.

Step three: Monaural Hearing Impairment Percentage.

Now, we return to the second sentence of subsection (2) which explains how to translate the hearing loss from decibels to percentages.

> For every decibel of loss exceeding 25 decibels, an allowance of 1½% shall be made up to the maximum of 100%, which is reached at 92 decibels.

We observe that after taking into account the age factor from the previous calculation, the right ear had an average hearing loss of 14 decibels. Under the standard set forth in subsection (1), this hearing loss is not compensable because it is less than 25 decibels. The percentage of occupational impairment to the right ear is 0%. To determine the percentage of impairment in the left ear, we must multiply 1½% (.015) times every decibel of loss exceeding 25 decibels.

$$.015 \ (85.6 - 25) = .909$$

The left ear, then, has a 90.9% hearing impairment.

Mr. Beach argues that once the excess over 25 decibels is multiplied by 1½%, the 25 decibels should be added back into the equation. Again, to follow his interpretation, we would have to add a sum expressed in decibels to a sum expressed in percentages. That would result in a mathematically incorrect computation. The Workers' Compensation Court provided an explanation why the statute utilizes a 25 decibel floor of compensability.

> The statutory language '. . . such losses of hearing shall not then constitute any compensable hearing disability.' is clear. The logic behind a 25 average decibel loss being noncompensable, as well as why a 92 average decibel loss is total, is found in Guides to the Evaluation of Permanent Impairment, American Medical Association, pp. 103-4, (1971).

> In order to evaluate the hearing impairment, it must be recognized that the range impairment is not nearly as wide as the audiometric range of human hearing. Audiometric zero, which is presumably the average normal threshold level, is not the point at which

6

impairment begins. If the average hearing level at 500, 1,000 and 2,000 Hz is 25 dB (15 dB, ASA-1951) or less, usually no impairment exists in the ability to hear everyday speech under everyday conditions. At the other extreme, however, if the average hearing level at 500, 1,000 and 2,000 Hz is over 92.7 dB (81.7 dB, ASA-1951), the impairment for hearing everyday speech should be considered total. For every detail that the estimated hearing level for speech exceeds 25 dB (15 dB, ASA-1951), 1.5% of monaural impairment is allowed up to a maximum of 100%. This maximum is reached at 91.7 dB (81.7 dB, ASA-1951).

Step four: Binaural Hearing Impairment Percentage.

The last step, found in subsection (3), requires a translation of monaural hearing loss percentages into a binaural hearing loss percentage. We compute this percentage as follows:

$$\frac{(0\% \times 5) + .909}{6} = .1515$$

Therefore, the binaural hearing impairment is 15.15%.

We now must calculate the compensation due Mr. Beach, pursuant to § 39-71-808(1), MCA:

(1) Subject to the limitations herein contained, there shall be payable:
(a) for total occupational deafness of one ear, 40 weeks of compensation;
(b) for total occupational deafness of both ears, 200 weeks of compensation; and
(c) for partial occupational deafness, compensation shall bear such relation to that named herein as disabilities bear to the maximum disabilities herein provided.

Mr. Beach's right ear sustained no compensable impairment and his left ear was not 100% impaired; therefore, the compensations listed in subsections (a) and (b) for maximum disabilities do not apply. Subsection (c) applies as Mr.

7

Beach has suffered partial occupational deafness. For monaural disability, he would receive 90.9% of 40 weeks or 36.36 weeks of compensation for his left ear and none for his right ear. For binaural disability, he would receive 15.15% of 200 weeks or 30.30 weeks of compensation. The Workers' Compensation Court awarded Mr. Beach 36.36 weeks as the greater amount of compensation to which he was entitled. We hold that the Workers' Compensation Court properly calculated monaural and binaural hearing impairments. We also hold that the court properly exercised its discretion in awarding Mr. Beach the larger sum to which he was entitled under the statute. Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

8